[Civ. No. 1513. Third Appellate District.—July 31, 1916.]

ANNIE GALLO, Respondent, v. A. GALLO, Appellant.

ADVERSE POSSESSION—OWNERSHIP OF ADJOINING PATENTED LANDS—INCLOSURE OF BOTH HOLDINGS—LEASING FOR GRAZING PURPOSES—INSUFFICIENT PROOF OF TITLE.—Where two brothers owned adjoining quarter-sections of patented land of little value, and neither lived nor resided upon the land covered by his patent for any long period after obtaining it, and neither had lived on any part of the half section for many years, the fact that one of the brothers inclosed both holdings with a wire fence, and leased the land for short periods for grazing purposes unknown to the other brother, is insufficient to sustain a claim to the whole tract by adverse possession.

ID.—HOSTILE CHARACTER OF HOLDING—ESSENTIAL ELEMENT.—In order to make out an adverse possession sufficient to constitute a defense under the statute of limitations, the owner must be notified in some way that the possession is hostile to his claim.

ID.—PAYMENT OF TAXES—REDEMPTION FROM TAX SALES—INSUFFICIENT COMPLIANCE WITH STATUTE.—The payment of taxes required as an element of adverse possession is not complied with by the redemption of the land from tax sales.

APPEAL from a judgment of the Superior Court of Tulare County. J. A. Allen, Judge.

The facts are stated in the opinion of the court.

Webster, Webster & Blewett, and Farnsworth & McClure, for Appellant.

A. H. Ashley, and Power & McFadzean, for Respondent.

ELLISON, J., *pro tem.*—Plaintiff brought this action to quiet her title to the northeast quarter of a certain section of land situated in Tulare County, and obtained judgment as prayed for. The defendant appeals.

On the trial the plaintiff introduced as evidence of her title to the quarter-section a patent from the United States to her husband, Giacomo Gallo, dated August 9, 1897, and a deed from the latter to her, of August 12, 1911, conveying the land.

The defendant (who is a brother of said Giacomo Gallo) as a defense alleged that he had obtained title to the land by adverse possession, and made no other claim.

Upon this appeal the defendant insists that the findings of the court to the effect that he had not acquired title by adverse possession are not sustained by the evidence, and this is the only question presented.

The record shows that, at about the time plaintiff's grantor obtained his patent for the northeast quarter of the section, the defendant obtained a patent for the northwest quarter of the same section. Evidently the land was considered of little value at the time. Neither brother lived nor resided upon the land covered by his patent for any long period after obtaining it, and neither has lived on any part of the half section for many years. (The plaintiff's quarter-section adjoins the defendant's on the east, and the two constitute the north half of the section.) The defendant testified that he

built a fence on the east side of the land in dispute about 1903 and during the same year inclosed the half section. The fence was of posts and three wires. When he first built the fence he leased the half section to one Goodale for two years at a rental of nine dollars per year. "He agreed to pay the taxes and build the fence." He pastured some cattle on it for two years. At some date, not stated, defendant leased the half section to a man, whose name he cannot recall, under a verbal lease for five years. He paid the rent, $40, for one year and no more, and defendant does not know how long he was on the land, but never saw him after the first year. In 1911 he leased the land to one Howard for five years under a written lease. This action was begun in October, 1912. The defendant never resided on the land in dispute and never made any use of it except as above stated. The land is in Tulare County and plaintiff's grantor, during all this time, lived in Stockton, and defendant testified his brother never knew he was leasing the land. He also testified that he had the whole half section assessed to himself, and paid all taxes on it for at least fifteen years. The evidence as to the payment of taxes is that they went delinquent in 1905 and that no taxes were paid in 1906, 1907, and 1908 until 1909, when the defendant redeemed the land from tax sales.

The witness, John Gallo, testified that, in the year 1908, the defendant told his father (the husband of plaintiff) that he wanted some money for taxes and his father laughed and said to him: "What rents are you getting from the land?" He said: "Not much." So father said to him: "If you will pay all the taxes, what is left you can keep for your troubles."

It is very clear to us that the defendant did not sustain his plea of adverse possession. The elements required to make out an adverse possession sufficient to constitute a defense under the statute of limitations are clearly stated in *Unger* v. *Mooney,* 63 Cal. 595, [49 Am. Rep. 100], and need not here be repeated. In said case it is said: "The adverse character of the possession must in every case be manifested to the owner. The owner must be notified, in some way, that the possession is hostile to his claim, or the statute does not operate on his right. As was said in the case cited in 84 N. Y., per Andrews, J., [*Trustees of East Hampton* v. *Kirk,* 84 N. Y. 215, 38 Am. Rep. 505], 'the object of the statute defining the acts essential to constitute an adverse possession is, that the

real owner may, by unequivocal acts of disseizor, have notice
of the hostile claim and be thereby called upon to assert
his legal title.' Hence, an open and notorious occupation
with hostile intent is a necessary constituent of an adverse
holding.''

The defendant did not personally occupy the land. No one
nor all of the persons to whom he leased it ever occupied it
for any five consecutive years.

The record does not show that taxes were paid for any one
period of five years. Under the decisions construing subdi-
vision 2 of section 325 of the Code of Civil Procedure, it is
held that redeeming land from tax sales is not the payment
of taxes contemplated by the law as an element of adverse
possession. "If it [the payment of taxes] is an element in
the adverse possession tending to show good faith, certainly
during those years in which the taxes have not been paid the
possession lacks an essential element required in the statute.
During all the years in which the delinquency was allowed,
the true owner might forbear suit because of his knowledge
that the person in possession had not paid taxes, thereby in-
dicating that he was not holding adversely.'' (*McDonald* v.
*McCoy,* 121 Cal. 73, [53 Pac. 427].)

The relationship of the parties has a bearing and may well
be considered. Two brothers owning adjoining land of little
value—far from where they are residing—used only for graz-
ing stock; one brother puts a wire fence around both holdings
and leases it for short periods. Such act from a stranger,
owning no adjoining land, would have far greater significance,
as showing a hostile holding, than when being done by a
brother owning the adjoining land.

In considering the case on appeal, it will be presumed that
all testimony introduced at the trial tending to support the
findings of the trial court was accepted by it as true. The tes-
timony of John Gallo, above referred to, wherein he states
that, in 1908, the defendant asked his father for money for
taxes and the latter said to him: ''If you will pay the taxes,
what is left you can keep for your troubles,'' is sufficient in
itself to negative all inferences of an adverse and hostile hold-
ing, and clearly sufficient to show that plaintiff's grantor was
not advised of any hostile claims, but rather points to an un-
derstanding between brothers for their mutual benefit. (See
*Mattes* v. *Hall,* 28 Cal. App. 361, [152 Pac. 436].) Consider-

ing the family relationship of the parties, the language used by the district court of appeal in *Glowner* v. *De Alvarez,* 10 Cal. App. 196, [101 Pac. 433], seems not inappropriate for quotation in this connection: "There are no equities in favor of a party seeking by adverse holding to acquire the property of another."

The judgment is clearly right, and is affirmed.

Chipman, P. J., and Hart, J., concurred.