320 P.2d 322

Karl R. LYMAN and Edith K. Lyman, his wife, Plaintiffs and Respondents,

v.

NATIONAL MORTGAGE BOND CORPORATION, a corporation of the State of Delaware, San Juan County, a body corporate and politic of the State of Utah, and all other persons unknown claiming right, title, estate or interest in or lien upon the real property described in the complaint adverse to plaintiffs' ownership or clouding plaintiffs' title thereto, Defendants,

Amalia V. Ybarra, personally; Amalia V. Ybarra, as administratrix of the Estate of Tomas Velarde, Deceased, Defendants and Appellants.

No. 8633.

Supreme Court of Utah.

Jan. 14, 1958.

E. J. Skeen, Salt Lake City, for appellants.

Duane Frandsen, Price, for respondents.

124

WADE, Justice.

The plaintiffs, Lyman, respondents here, seek to quiet title to certain land in San Juan County, which they claim through a tax deed and adverse possession. The defendants, Ybarra, appellants here, claim as heirs and successors in interest of Tomas Velarde, deceased, the original patentee of such land. This appeal is taken from a judgment quieting plaintiffs' title in the land.

December 12, 1941, plaintiffs' predecessors received a tax deed from the county. Since then plaintiffs or their predecessors have been in exclusive and open possession of such property and have cultivated, planted and harvested crops, used the land for grazing purposes, improved the same and enclosed it within a substantial fence. The appellants have neither occupied nor been in actual possession of such property during such time. Appellants concede that plaintiffs have produced sufficient evidence to establish title by adverse possession under Chapter 19, Laws of Utah for 1951, see Supplement to Volume 9, U.C.A.1953, section 78–12–5.1, 2, 3; and 78–12–7.1; 78–12–12.1, except they failed to show payment of all the taxes which have been levied and assessed upon such land during such time for a period of four consecutive years before the taxes became delinquent. However, the evidence is clear that plaintiffs and their predecessors in interest have paid all the taxes or redeemed the property from such taxes before the May sale for each and every year since the issuance of the tax deed on December 12, 1941. Our problem is to determine whether the failure to pay the taxes assessed upon the property prevents the court from quieting plaintiffs' title thereto under the above cited statutes.

Section 104–2–7, U.C.A.1943, as amended by the Laws of Utah for 1951, which is the same as section 78–12–7.1 Pocket Supplement to Volume 9, U.C.A.1953, and section 104–2–12, U.C.A.1943, as amended by the Laws of Utah for 1951, which is the same as section 78–12–12.1 Pocket Supplement to Volume 9, U.C.A.1953, expressly require payment by the holder of a tax title to real property or his predecessor of all taxes levied and assessed upon such real property after the delinquent tax sale or the transfer under which he claims for a period of not less than four years, and for not less than one year after the effective date of the 1951 amendment.[1] Thus pay-

1. Section 104–2–7, U.C.A.1943, as amended by Laws of Utah for 1951 and section 78–12–7.1 Pocket Supplement to Volume 9, U.C.A.1953, provides as follows:

"In every action for the recovery or possession of real property or to quiet title to or determine the owner thereof the person establishing a legal title to such property shall be presumed to have been possessed thereof within the time required by law; and the occupation of such property by any other person shall

ment of such tax is a necessary requirement in order to establish adverse possession by a tax title claimant under these statutes.

In Bowen v. Olson,[2] decided in 1953 under Section 78–12–12, U.C.A.1953, prior to the 1951 amendment, we held that a redemption from a delinquent tax assessed against the property claimed by adverse possession under a tax sale did not constitute a payment of taxes levied and assessed upon such property within the meaning of that statute. After a careful consideration we adopted the majority rule on that question and we are not now inclined to overrule that decision but adhere thereto. The facts in that case are not distinguishable from the facts in this case.

Plaintiffs contend that a different result is required by the 1951 amendments to Section 104–2–5, U.C.A.1943, which is the same as 78–12–5.1, Pocket Supplement to Volume 9, U.C.A.1953, and Section 104–2–5.10, Laws of Utah for 1951, which is the same as Section 78–12–5.2, Pocket Supplement to Volume 9, U.C.A.1953.[3] In plain-

be deemed to have been under and in subordination to the legal title, unless it appears that such property has been held and possessed adversely to such legal title for seven years before the commencement of such action. Provided, however, that if in any action any party shall establish prima facie evidence that he is the owner of any real property under a tax title held by him and his predecessors for four years prior to the commencement of such action and one year after the effective date of this amendment he shall be presumed to be the owner of such property by adverse possession unless it appears that the owner of the legal title or his predecessor has actually occupied or been in possession of such property under such title *or that such tax title owner and his predecessors have failed to pay all the taxes levied or assessed upon such property within such four year period.*" (Emphasis ours.)

Section 104–2–12 U.C.A.1943 as amended by the Laws of Utah for 1951, and section 78–12–12.1 Pocket Supplement to Volume 9, U.C.A.1953, provides as follows:

"In no case shall adverse possession be established under the provisions of this Code, unless it shall be shown that the land has been occupied and claimed for the period of seven years continuously, *and that the party, his predecessors and grantors have paid all the taxes which have been levied and assessed upon such land according to law. Provided, however, that payment by the holder of a tax title to real property or his predecessors, of all the taxes levied and assessed upon such real property after the delinquent tax sale or transfer under which he claims for a period of not less than four years and for not less than one year after the effective date of this amendment, shall be sufficient to satisfy the requirements of this section in regard to the payment of taxes necessary to establish adverse possession.*" (Emphasis ours.)

The proviso clauses of each of these statutes were added by the amendments.

2. Bowen v. Olson, 2 Utah 2d 12, 268 P. 2d 983.

3. Section 104–2–5, U.C.A.1943, as amended by Laws of Utah for 1951, and section 78–12–5.1, Pocket Supplement to Volume 9, U.C.A.1953 provides:

"No action for the recovery of real property or for the possession thereof shall be maintained, unless the plaintiff

tiffs' brief these sections are referred to as statutes of limitation as distinguished from the other sections previously cited above, which are referred to as adverse possession statutes. Hereinafter these designations will be used to distinguish the two sets of statutes.

These sections forbid the commencement or maintenance of an action or defense claiming ownership or right of possession to real property, unless the claimant was seized, possessed or occupied such property within seven years prior to the commencement of such action. Where the adverse party, in such action, claims under a tax title the limitations period is short-

ened to require seizure, possession or occupation within four years after the creation of the tax title claim. These statutes are different from the adverse possession statutes considered above in that they contain no requirement that the adverse party to the claimant in such action must have had adverse possession and paid all taxes assessed against such property during the limitations period. In fact, the limitation statutes make no mention of any rights which the adverse party must have in order to invoke the provisions of these limitation statutes.

A very strict construction of these statutes might require a holding in plaintiffs'

or his predecessor was seized or possessed of such property within seven years from the commencement of such action; provided, however, that with respect to actions or defenses brought or interposed for the recovery or possession of or to quiet title or determine the ownership of real property against the holder of a tax title to such property, no such action or defense shall be commenced or interposed more than four years after the date of the tax deed, conveyance, or transfer creating such tax title unless the person commencing or interposing such action or defense or his predecessor has actually occupied or been in possession of such property within four years prior to the commencement or interposition of such action or defense or within one year from the effective date of this amendment."

The proviso clause was added by this amendment.

Section 104–2–5.10, Chapter 19, Laws of Utah for 1951, and Section 78–12–5.2 Pocket Supplement to Volume 9, U.C.A. 1953, provides:

"No action or defense for the recovery or possession of real property or to quiet title or determine the ownership thereof shall be commenced or interposed against the holder of a tax title after the expiration of four years from the date of the sale, conveyance or transfer of such tax title to any county, or directly to any other purchase thereof at any public or private tax sale and after the expiration of one year from the date of this act. Provided, however, that this section shall not bar any action or defense by the owner of the legal title to such property where he or his predecessor has actually occupied or been in actual possession of such property within four years from the commencement or interposition of such action or defense. And provided further, that this section shall not bar any defense by a city or town, to an action by the holder of a tax title, to the effect that such city or town holds a lien against such property which is equal or superior to the claim of the holder of such tax title."

favor even though they have failed to show payment of the taxes for the period required by the adverse possession statutes, for it is clear that none of the defendants have actually occupied or been in possession of the property within the prescribed limitations period. However, plaintiffs can prevail only if we hold that defendants' claims are barred under these limitations statutes by their failure to occupy or be in possession of the property within the prescribed period, regardless of whether plaintiffs have proved a valid claim to this property. Such a holding would leave the plaintiffs in possession although they have failed to establish any valid claim to such property under the adverse possession statutes previously discussed on which their claims are based or by any other means.

We do not think that such construction of these statutes was intended. Plaintiffs must succeed on the strength of their own claim and not alone on the weakness of the defendants'·claims in order to succeed. The mere failure of the defendants to show that they have actually occupied or been in possession of this property is not sufficient to bar their rights to recover the property where, as here, plaintiffs have failed to establish any valid claim or right to the property in themselves. These limitation statutes, although they do not expressly so provide, only bar the right of a party to maintain an action to recover real property where the opposing party establishes a right of possession or ownership in the property. This plaintiffs have failed to do, so the decision must be reversed.

The construction which plaintiffs contend for if applied in Bowen v. Olson, supra, would have required a different result in that case. For although that case was decided under Section 104–2–5, U.C.A. 1943, prior to the 1951 amendment, as pointed out in note 3 above, the amendment did not change the first·part of the prior statute, it merely added the proviso clause. Prior to the amendment this statute proscribed the maintenance of an action for the recovery or possession of real property unless the plaintiff was seized or possessed of such property within seven years from the commencement of the action, and in that case the original owner did not show that he had been so seized or possessed of the property in question within the seven year period. This question was not raised or passed on or considered in that case.

The conclusion that we have reached that plaintiff has failed to make a case and therefore cannot prevail is in accord with Article I, Section 11 of Utah's Constitution, which provides:

"All courts shall be open, and every person, for any injury done him in his * * * property * * * shall have remedy by due course of law

* * * without denial or unnecessary delay; * * * "

To construe this statute so as to bar the defendants from presenting their claims in this case in a court would be in effect to deny them access to the courts to litigate a valid right to property. This seems to be what the constitutional provision prohibits.

The case is reversed and remanded with directions to determine the rights of the parties to this action in this property in accordance with this opinion. Nothing in this opinion is intended to preclude the plaintiffs from foreclosing any lien which they may have upon this property under Section 59–10–65, U.C.A.1953, for taxes which they have paid which have been assessed against the property. Costs to appellants.

CROCKETT, J., concurs.

HENRIOD, Justice (concurring).

I concur, but on the simple fact that, by failure to pay the taxes required by the statute, plaintiffs did not prove their case, and the court should have entered a no cause of action judgment. To discuss constitutional problems raised, which I think are unnecessary for this decision, seems only to confuse rather than to clarify here.

McDONOUGH, C. J., concurs in the concurring opinion of HENRIOD, J.

WORTHEN, Justice.

I dissent. It appears that the majority opinion completely ignores the legislative mandate contained in Sections 78–12–5.1 and 78–12–5.2, Pocket Supplement to Volume 9, U.C.A.1953.

Those sections are set out in full in the majority opinion but without the chapter caption, which I think significant.

The purpose for enactment of those two sections is declared in the caption of the chapter which is as follows:

"Real Property—Limitations

"An Act Amending Sections 104–2–5, Utah Code Annotated 1943 as Amended by Chapter 18, Laws of Utah 1943; 104–2–7 Utah Code Annotated 1943 and 104–2–12, Utah Code Annotated 1943, and Repealing Section 104–2–5.10, as Amended by Chapter 19, Laws of Utah 1943 as Amended by Chapter 8 Laws of Utah 1947, and Enacting New Laws to Be Known as Sections 104–2–5.10 and 104–2–5.11, *Limiting the Period Within Which Actions May Be Commenced for Recovery of Real Property Sold and Conveyed to the County Under Tax Deed or for the Possession Thereof.*" (Emphasis added.)

The majority opinion concedes that the two sections set out in footnote 1 of the majority opinion are what are referred to

as adverse possession statutes, and that the two sections set out in footnote 3 of the majority opinion are what are referred to as statutes of limitation. Yet that opinion makes arguments which might well have been directed to a legislative committee urging that the legislature refrain from enacting those sections. The majority opinion makes certain statements which are obvious misstatements. It states: "* * * the limitation statutes make no mention of any rights which the adverse party must have in order to invoke the provisions of these limitations statutes" when the statute clearly states that the party must be a holder under a tax title. It also states that "such a holding [as plaintiffs contend] would leave the plaintiffs in possession although they have failed to establish any valid claim to such property *under the adverse possession statutes* previously discussed on *which their claims are based* or by any other means." The opinion there shows a complete lack of comprehension as to the basis of plaintiffs' claims. Plaintiffs' claims are not based on the adverse possession statutes but rather upon a tax title and the limitations sections.

The majority opinion also states, "We do not think that such construction of these statutes was intended." Who are we to determine legislative intent except by their wording in the statute? It seems to me that the statute in question is plain and unambiguous that title shall be quieted in the holder of a tax title against anyone who has been out of possession for four years. Why should we read requirements into those sections which the legislature saw fit to leave out?

Certainly we are not privileged to say the legislature could not have intended to enact these statutes, and we therefore will declare them to be of no force and effect in order to save the legislature from its own folly in enacting them unintentionally.

The majority opinion assumes that the legislature may, by the enactment of an adverse possession statute, prevent the legal owner from asserting his title if the adverse claimant has paid all taxes levied and assessed for the period of four years and has occupied and claimed the land for the period of seven years continuously. But the opinion states that the legislature did not intend to set up a four-year limitation statute notwithstanding that the declared intent of the legislature as set out in the caption of said chapter and in the limitation sections was to do exactly that. Nor can I concede that the holder of the tax title is given neither the title nor the legal right of possession by any statute until he has held adversely for the period of seven years and paid the taxes.

The argument of the majority opinion begs the question of whether plaintiffs'

tax title coupled with four years of possession is a valid title and proceeds on the theory that such title is not valid and then argues from that point. Such a theory does violence to the very language of the statute and is another attempt to adroitly sidestep legislative intent. We are not privileged to say that the legislature cannot establish any statute of limitations unless the same contains the same provisions as are contained in the adverse possession statute.

The inference that the limitation sections may be unconstitutional under a literal construction of them seems to have no foundation and certainly cannot be seriously considered. If these limitation sections are unconstitutional then every statute that is not in accord with the adverse possession statute is likewise unconstitutional. Our limitation statutes range from six months to eight years and the question of the limitation period is a legislative and not a judicial question. It is a well-recognized rule of statutory construction that courts will not abort the legislative will by substituting their judgment for that of the legislature.

These facts appear from the majority opinion:

(1) In 1941 plaintiffs' predecessor received a tax deed from the county.

(2) At all times since 1941 plaintiffs or their predecessors have been in exclusive and open possession of such property and have cultivated, planted and harvested crops, used the land for grazing and enclosed it within a substantial fence.

(3) Appellants have neither occupied nor been in actual possession of the property during such time.

By its enactment of Sections 78–12–5.1 and 78–12–5.2 the legislature did not intend those sections to be limited as are the adverse possession sections. It would have been very easy for the legislature to require under the limitation sections the payment of taxes. Certainly it is not within our right to add that provision when the legislature saw fit to leave it out.

As I view the legislative action in enacting Chapter 19 in question, it was to carve out a specific situation applicable to property held under tax title and make a new statute of limitations that would protect the county or a purchaser from the county against the record owner who for four years had not concerned himself with the property, had not treated it as if he were the owner and had been out of possession during the full four-year period.

In Peterson v. Callister [1] we stated:

"Title 78–12–5.1 is a statute of limitations which prevents the assertion of a defense by a record owner if he has not had possession of the property during a four-year period after one

1. 6 Utah 2d 359, 313 P.2d 814, 815.

has received a tax title thereto. * * It is not unlike other statutes of limitation, such as those barring an action on negotiable paper by passage of time. The obligation in such case may remain but the holder cannot enforce it. * * * It is a statute of repose, obviously intended to lay at rest claims against tax titles which are asserted more than four years after acquisition of a tax title under statutory proceedings, and where the record owner has not had possession during that period. * * * We believe the legislature had in mind a four-year statute of limitations barring claims against tax titles, which four-year period dated from the initiation of the tax title, during which period any claimant against the tax title must have had possession of the property to protect any claim he might have. Any other interpretation does not square with the general nature and purpose of the act, and could lead to novel and, we believe, unintended results, so as to defeat the entire purpose of a statute that seems to be designed to settle, not confuse, and to make certain, not uncertain, titles based on statutory liquidation of tax charges."

Nor is the statement in the majority opinion, that this construction of the statute would have required a different result in Bowen v. Olson[2] correct. In that case the action was commenced before the present limitations statute was passed, and to dismiss the matter by stating that a mere proviso was added to the adverse possession statute solves nothing.

The legislature, by the enactment of the limitation statutes, clearly intends to give the tax title holder a new title resting upon his tax title which cannot be challenged by anyone who has been out of possession more than four years no matter what his claims to the property once were. What the majority opinion fails to recognize is that someone can have a better title than the record title holder; namely, the holder of the tax title. That opinion erroneously overlooks the fact that plaintiffs have established their tax title by the statute's interdiction against raising of defenses or commencing actions against a tax title holder after being out of possession continuously for a four-year period following the issuance of the tax title and one year after the enactment of the statute.

This court seems to have exerted great legal gymnastics in its effort to overturn obvious legislative intent in order to set aside tax titles. I am unable to understand by what reasoning the court feels compelled to frown upon tax titles unless on the assumption that taking a man's property for taxes is a harsh remedy; yet, on the other hand, it has no hesitancy

2.   2 Utah 2d 12, 268 P.2d 983.

in sustaining the mortgagee's right to foreclose and take a man's property for failure to pay a mortgage. In addition the tax defaulter gets a minimum of four years of grace before his property is taken, whereas, the mortgagor has only six months within which to redeem his property. A taxpayer's obligation to society is a real obligation and no sharp practice is permissible under the statute. If he will fail to protect his property during the four-year period following the failure to pay the taxes he probably would, like the defendant here, fail for an additional twenty-six years.