## JENKINS et ux. v. MORGAN et al.

No. 7108.   Decided August 16, 1948.   (196 P. 2d 871.)

· See 2 C. J. S., Adverse Possession, sec. 177. Sufficiency of compliance, as regards payment of taxes, with limitation statute requiring payment of taxes as a condition of adverse possession, see note, 132 A. L. R. 216. See, also, 1 Am. Jur. 905.

536

J. *Rulon Morgan,* of Provo, for appellants.

W. D. *Beatie,* of Salt Lake City, and *Arnold Roylance,* of Springville, for respondents and defendants.

LATIMER, Justice.

This is a suit to quiet title to three parcels of land situated in Utah County. Specifically the three parcels are: The southwest quarter of the southwest quarter of section 17; the north half of the northeast quarter of section 19; and the northwest quarter of the northwest quarter of section 20, all in township 10 south, range 1 east, Salt Lake meridian.

Patents to the land were issued to John L. Jenkins in 1894. He held title at the time he died intestate in 1905. The administration of his estate was commenced in 1917, but before the final decree, all of the heirs had conveyed their respective interests in the land to the plaintiff, Hyrum Jenkins. These conveyances were confirmed on March 22, 1920 by decree of the probate court which declared title to be in the plaintiff, Hyrum Jenkins.

The land was first sold to Utah County for taxes assessed for the year 1917. There being no redemption of the 1917 taxes, the county auditor issued an auditor's tax deed to the county in 1922. Subsequent taxes were added to the 1917 sale. Utah County quit-claimed its interest to Peter N. Anderson in 1927 and again in 1932. The land was again sold to Utah County for taxes assessed against Peter

N. Anderson for the year 1937. No deed was ever taken by the County under this sale.

On May 23, 1945, Utah County conveyed its interest in the southwest quarter of the southwest quarter of section 17, township 10 south, range 1 east, for the sum of $27.14 to John B. Morgan, and on September 5, 1944, conveyed its interest in the northwest quarter of the northwest quarter of section 20, township 10 south, range 1 east, for the sum of $50.00 to John B. Morgan. On September 5, 1944, Utah County conveyed its interest in the north half of the northeast quarter of section 19, township 10 south, range 1 east, for the sum of $100.00 to Morgan Brothers. On July 8, 1946, Utah County conveyed its interest in the southwest quarter of the southwest quarter of section 17, township 10 south, range 1 east, for the sum of $41.45 to Ethel G. Morgan. On March 12, 1946, Peter N. Anderson and Lucy Anderson, his wife, by quitclaim deed conveyed their interests to the plaintiff.

The trial court quieted title in the plaintiffs and ordered plaintiffs to reimburse the defendants for the sums expended in purchasing their tax titles and for taxes paid by defendants to date with interest. The defendants bring this appeal assigning numerous errors said to have been committed by the court below. However, the only questions that need be considered by this court are: (1) Whether the record discloses any title in the plaintiffs. (2) Whether defendants have acquired title by adverse possession. (3) Whether defendants' title is superior to that of the plaintiffs by virtue of their respective tax deeds received from Utah County in 1944, 1945 and 1946.

The defendants first attack plaintiffs' title on the theory the probate court, of the Fourth Judicial District, sitting in Utah County, failed to acquire jurisdiction in probating the estate of John L. Jenkins in 1917. To support this contention they rely on the case of *In re Phillips' Estate,* 86 Utah 358, 44 P. 2d 699. They contend there was a failure to comply with the statutory requirements governing the publication of notice and that this

fact rendered the probate decree a nullity. We are not called upon to decide whether the decree was void or not because the record before us does not indicate a failure to comply with the statutory requirements regarding notice. The only evidence in the record is the affidavit of the officer who posted notice. This shows posting in three public and conspicuous places in Provo City, Utah County, namely, at the north entrance of the County Court House, at the southwest corner of the intersection of Center and First East Street and immediately east of the Provo City Fire Hall on Center Street.

We said in the *Phillips* case, supra [86 Utah 358, 44 P. 2d 705]:

"Be that as it may, the proof of posting contained in the probate files reveals the postings to have been at the west entrance of the city and county building, on University avenue and on Center street. We cannot take judicial notice that these streets are in Provo or that they are actually within 80 yards of each other. We are confined to the facts set out in the petition to set aside for that information."

This reasoning is applicable here. We cannot take judicial notice of the location of the places recited in the affidavit and without so doing we cannot find improper posting. The burden rests on the defendants to establish noncompliance with the statute and in this they have failed.

Defendants next assert they acquired title to the lands by adverse possession. Defendants contend that for more than 7 years immediately preceding the commencement of this action, they were in the exclusive, notorious and uninterrupted possession of all three parcels of land and paid all taxes levied and assessed thereon during all of said seven years. The statutory methods of acquiring title by adverse possession, set out in sections 104-2-7 and 104-2-12, U. C. A. 1943, R. S. U. 1933, and Compiled Laws of 1917, sections 6451 to 6456 are exclusive. See *Central Pacific Railway Co.* v. *Tarpey*, 51 Utah 107, 168 P. 554, 1 A. L. R. 1319; *Home Owners' Loan Corporation* v. *Dudley*, 105 Utah 208, 141 P. 2d 160. The record

does not indicate whether defendants claim under a written instrument or not, but the earliest date at which they could claim title under any written instrument is 1944, 1945, and 1946. It was in these years that they received their quit-claim deeds from Utah County. Any rights defendants may have acquired by adverse possession must therefore be determined under section 104-2-11, U. C. A. 1943, which provides for the acquisition of title by adverse possession not under a written instrument. The statute reads as follows:

"For the purpose of constituting an adverse possession by a person claiming title, not founded upon a written instrument, judgment or decree land is deemed to have been possessed and occupied in the following cases only: (1) Where it has been protected by a substantial inclosure. (2) Where it has been usually cultivated or improved. (3) Where labor or money has been expended upon dams, canals, embankments, aqueducts or otherwise for the purpose of irrigating such lands amounting to the sum of $5 per acre."

One who claims title by adverse possession not founded on a written instrument is required to bring himself within this section of the statutes. We find no evidence in the record that the defendants have complied with the requirements therein set forth. We find only a claim of exclusive, notorious, and uninterrupted possession of the land by the defendants together with their claim of having paid all taxes. The only evidence of any possession of the land consists of the use by the defendants of the land for grazing of their cattle. However, this use was not exclusive. One Okelberry also used the lands in dispute for the grazing of his cattle during the years in question. Defendants admit knowledge of Okelberry's use of the land without intervention or complaint on their part. It would thus appear that defendants have failed to establish occupation or possession within the limits of the statutory requirements.

The record fails to sustain defendants' contention that they have paid taxes on the lands here in dispute for the statutory period. If any taxes were paid by defendants for the years prior to 1944, 1945 and 1946, ■

they were part of and included in the consideration given for the tax deeds from Utah County. In *Aggelos* v. *Zella Mining Co.*, 99 Utah 417, 107 P. 2d 170, 171, 132 A. L. R. 213, this court speaking through Justice Wolfe said:

"It therefore appears that except for the tax deed which appellant obtained from the county, taxes were paid for only four years before the commencement of the quiet title action, and not for seven as required by statute. It has been repeatedly held in other jurisdictions that the purchase of a tax title or redemption from a tax sale cannot be considered as payment of taxes within the meaning of statutes similar to ours (citing cases.) * * * The tax deed conveyed to appellant the claimed interest of the different taxing units in the property and did not constitute a payment of the taxes on the property within the meaning of the statute."

Defendants next contend they obtained title to the lands from Utah County under their tax deeds. The trial court found there were no auditor's affidavits attached to the 1917 and 1937 assessment rolls and under this finding decreed defendants' title void. Although a failure to make or subscribe the auditor's affidavit will not in any manner affect the validity of the assessment, the affidavit is a condition precedent to a valid tax deed from the county. In *Telonis* v. *Staley*, 104 Utah 537, 144 P. 2d 513, 517 we said:

"When the assessor completed his work, the assessment roll is still subject to correction and modification by the county board of equalization, and by the State Tax Commission. The taxpayer is not yet bound by any valuations or computations, so that the assessor's affidavit does not purport to certify that the assessment roll is in final form. After the board of equalization has completed its changes and corrections, which the auditor is required to enter, and after the auditor has made such changes, if any, ordered by the State Tax Commission, the assessment roll then becomes the final and completed tax roll if the auditor has performed his work pursuant to law.

"* * * The aforesaid affidavit is one of the statutory functions of the county auditor, and such affidavit must be executed and properly attached. The property owner is entitled to rely on such verification and the treasurer is bound thereby and he is required to proceed to issue the tax notices in accordance therewith, and to collect the taxes based on the computations of the auditor. The final affidavit of the auditor thus becomes highly important, and in the ab-

sence of any curative provision in the statutes for failure of the auditor to subscribe to and attach such certificate of authentication in affidavit form, the requirement of the statute must be observed."

The rule thus announced has been reaffirmed by this court in *Equitable Life & Casualty Ins. Co.* v. *Schoewe,* 105 Utah 569, 144 P. 2d 526; *Tree* v. *White,* 110 Utah 233, 171 P. 2d 398; and *Petterson* v. *Ogden City,* 111 Utah 125, 176 P. 2d 599.

Defendants, however, question the sufficiency of the evidence supporting the finding that there had been no auditor's affidavits attached to the 1917 and 1937 assessment rolls as required by law, particularly in view of the fact that our statutes provide that a duly executed tax deed properly recorded is prima facie evidence of regularity. This presumption arises from Section 80-10-35, U. C. A. 1943. The statute provides:

"A copy of the record of any tax sale duly certified by the official custodian of such record at the time of the certificate under the seal of his office as a true copy of the entry in the official record showing such sale is prima facie evidence of the facts therein shown, and the regularity of all proceedings connected with the assessment, valuation, notice, equalization, levies, tax notices, advertisement and sale of property therein described, and the burden of showing any irregularity in any of the proceedings resulting in the sale of property for the nonpayment of delinquent taxes shall be on him who asserts it."

The record shows the testimony of the County Treasurer and his Deputy that they had examined all assessment rolls for 1917 and 1937 and had failed to find any auditor's affidavits attached thereto or any appearance of there ever having been any auditor's affidavits so attached. This testimony stands uncontradicted and under the rule adopted in *Tree* v. *White,* supra, the evidence is sufficient to support the finding of the trial court. In that case we adopted the rule found in *Hall* v. *Kellogg,* 16 Mich. 135, as follows:

" 'The law presumes that all officers entrusted with the custody of public files and records, will perform their official duty by keeping them safely in their offices. Where a paper is not found where, if in existence, it ought to be deposited or recorded, the presumption there-

fore arises that no such document has ever been in existence. * * * Until this presumption is rebutted, it must stand as proof of such non-existence.'" [171 P. 2d 400.]

We further said:

"It would extend a presumption beyond all rational limitations to assume that documents which cannot be found where they should be found if executed, were nevertheless properly executed and attached to the proper records. The rule sought to be established by appellants to supply missing links in the alleged chain of tax title, does not accord with the text statement of the law in 10 R. C. L. p. 881: '* * * But no presumption, it has been held, will be indulged that an officer acting under a naked statutory power, with a view to divest, upon certain contingencies, the title of the citizen, has done his duty, and complied with the law; the purchaser relying upon the execution of the power must show that every preliminary step prescribed by the law has been followed.'"

At the time of trial, there were no auditor's affidavits attached to the assessment rolls for 1917 and 1937. If there had been any auditor's affidavits, the place where they should be found is with the assessment rolls. It follows that defendant's tax deeds, being founded upon assessments unsupported by auditor's affidavits, were insufficient to convey the interest of the county in the lands.

We have considered the other errors assigned by defendants but find them either without merit or unnecessary to the proper disposition of the case.

For these reasons, the judgment of the trial court quieting title in the plaintiffs is affirmed. Costs to the respondents.

McDONOUGH, C. J., and PRATT, and WOLFE, JJ., concur.

WADE, Justice (concurring in the result).

I concur with the result and generally with the reasoning in the prevailing opinion. I am not prepared to agree that the moneys paid in consideration for the tax deeds

does not constitute a payment of the taxes within the meaning of Section 104-2-12, U. C. A. 1943. However, since the possession of this property was not exclusive, it is not necessary for us to pass on this question, and I express no opinion thereon.